UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 11-90-GWU


JANET LEE BULLOCK,                                          PLAINTIFF,


VS.                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

        Janet Bullock brought this action to obtain judicial review of an administrative

decision on her applications for Disability Insurance Benefits and Supplemental

Security Income.    The case is before the court on cross-motions for summary

judgment.

**APPLICABLE LAW**

        The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

>        1.        Is the claimant currently engaged in substantial gainful activity?
>                  If so, the claimant is not disabled and the claim is denied.
>
>        2.        If the claimant is not currently engaged in substantial gainful
>                  activity, does he have any "severe" impairment or combination
>                  of impairments--i.e., any impairments significantly limiting his
>                  physical or mental ability to do basic work activities?  If not, a
>                  finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Bullock, a 50-year-old former bartender and waitress with a "limited" education, suffered from "severe" impairments related to depression and anxiety. (Tr. 22, 26). The ALJ determined that an August, 2004 stroke and vision problems were not "severe" impairments imposing work-related limitations. (Tr. 22-23). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform work at all exertional levels restricted from

5

a full range by a number of mental limitations.  (Tr. 24, 26).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 26-27).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 27).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Jackie Rogers included such mental limitations as (1) a restriction to simple and some detailed tasks and instructions; (2) a restriction of maintaining concentration and attention in two-hour segments over an eight-hour time period; and (3) a limitation to task-oriented settings in which contact with others would be casual and infrequent.  (Tr. 40-41).  The ALJ indicated that such a person would be able to respond appropriately to supervisors and co-workers, adapt to simple changes and avoid hazards in such work settings.  (Id.).  Rogers reported that restrictions concerning public contact would preclude the performance of Bullock's past work as a bartender and waitress.  (Tr. 41).  However, the expert identified a significant number of positions such as laundry worker and kitchen worker which could still be done.  (Id.).  Therefore, assuming that the vocational factors considered by Rogers

fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Bullock's mental condition. Psychologists Jane Brake (Tr. 846-847) and Jay Athy (Tr. 877-878) each indicated under the "Summary Conclusions" section of their Mental Residual Functional Capacity Assessments that the plaintiff would be "moderately" limited in the ability to work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public and respond appropriately to changes in the work setting.  In Section III of the Assessment form, the reviewers each stated that despite these limitations, the claimant would have the ability to understand and recall simple and detailed material, sustain concentration and persistence at simple tasks for two-hour segments, function socially in an object-focused setting requiring little public contact and adapt to routine changes.  (Tr. 848, 879).  The hypothetical question was essentially consistent with these opinions.

Bullock argues that the ALJ erred in rejecting the opinion of Dr. Gary Patton, a treating source.  Dr. Patton opined in December of 2007 and July, 2008 that the plaintiff was totally disabled.  (Tr. 883, 886, 918).  As noted by the ALJ, an opinion that a claimant is disabled is a finding reserved to the Commissioner and not binding on the agency.   20 C.F.R. § 404.1527(e)(1).   Thus, the ALJ properly rejected the doctor's disability opinions.

Dr. Patton also completed a Medical Source Statement on December 27, 2007 indicating that Bullock would have a "poor or none" ability in such areas as relating to co-workers, dealing with the public, interacting with supervisors, dealing with work stress, and maintaining attention and concentration. (Tr. 884, 887). The plaintiff would have a "fair" ability to follow work rules, use judgment, function independently and maintain emotional stability. (Id.). These are far more severe mental restrictions than those found by the ALJ. When these restrictions were presented to the vocational expert, no jobs could be identified as remaining available. (Tr. 41-42). The ALJ rejected Dr. Patton's assessment because it was inconsistent with the bulk of evidence in the record, including the doctor's own treatment notes. (Tr. 25-26). This action appears appropriate. Dr. Patton treated the claimant at the Behavioral Medicine Network. (Tr. 194-216, 889-906). The court notes that prior to the December, 2007 assessment, Dr. Patton repeatedly noted that the claimant's mental problems did not impose work-related restrictions.[1] (Tr. 202, 206, 211, 215). While the doctor's opinion could have changed, he did not identify the reasons for this drastic reversal of his opinion. The undersigned observes that the findings contained in Dr. Patton's treatment notes, both before and after the December 27, 2007 assessment are remarkably consistent. The doctor repeatedly indicated that psychomotor was normal, she was non-delusional,

---

[1]The ALJ cited these findings in support of his denial decision. (Tr. 25).

8

she had no perceptual disturbance, her insight was good, judgment was intact and memory normal both before December, 2007 (Tr. 197, 202, 205-206, 208, 210-211, 215, 890-891, 893, 895-899, 900-901) and after the physician completed the assessment (Tr. 902-905). These modest findings do not suggest total disability. Therefore, under these circumstances, the undersigned finds that the ALJ dealt properly with Dr. Patton's opinion.

Dr. Karen Saylor also opined that Bullock was totally disabled as a result of her mental problems. (Tr. 852-853). Dr. Saylor did not identify specific mental limitations. The ALJ, noting that the physician had indicated the plaintiff's depression and anxiety were stable and providing treatment primarily for cough and allergy symptoms, rejected this opinion from Dr. Saylor. (Tr. 26). As previously noted, this disability opinion would be an opinion reserved to the Commissioner and not binding on the ALJ under the federal regulations. 20 C.F.R. § 404.1527(e)(1). Therefore, the ALJ properly rejected it.

The ALJ also dealt properly with the evidence of record relating to Bullock's physical condition. While the plaintiff had complaints about vision problems, Dr. David Kielar examined her and found her best-corrected vision to be 20/25 on both the left and right. (Tr. 830). Functional restrictions related to vision were not imposed. (Tr. 826-831). The claimant has not argued that the ALJ erred in finding that the claimant's vision problems were not a "severe" impairment.

9

The ALJ also properly concluded that Bullock's August, 2004 stroke was not "severe" and did not impose any work-related restrictions.  Dr. Saylor indicated in January of 2007 that the plaintiff had mainly recovered physically from her stroke, with problems with depression and anxiety her main concerns.  (Tr. 852).  The court notes that following the August, 2004 stroke, the claimant returned to work and indicated that she left the job due to being fired over accusations of being rude to customers, and subsequently had even looked for other employment.[2]  (Tr. 35).  Dr. David Swan reviewed the record in October of 2007 and opined that it did not reveal the existence of a "severe" physical impairment.  (Tr. 876).  These reports provide substantial evidence to support the administrative decision.

Dr. Barry Burchett examined Bullock in September of 2007 and opined that she suffered from impairment of fine motor skills of the left hand, relative weakness of the left hand, left lower extremity and a history of intermittent expressive aphasia, all related to her past stroke.  (Tr. 858).  Dr. Burchett thought she might have difficulty with prolonged ambulation and would be impaired in performing activities requiring fine motor skills with the left hand.  (Tr. 859).  These restrictions suggest the existence of a "severe" physical impairment related to the stroke.  However, Dr. Swan, the medical reviewer, opined that Dr. Burchett's opinion was not supported

---

[2]The claimant did not allege she became disabled until July 1, 2006, almost two years after her stroke.  (Tr. 94).

by objective medical evidence and inconsistent with the overall record.  (Tr. 876).

The court notes that despite her history of stroke, the plaintiff returned to work as

a bartender and waitress.  (Tr. 34).  The Dictionary of Occupational Titles (DOT)

indicates at DOT Nos. 312.474-010 and 311.477-018 that these positions would

require a lot of fingering and handling.  Yet, the claimant was able to handle this

work.  Bullock has not argued that the ALJ erred in failing to rely upon the opinion

of Dr. Burchett.  Therefore, the court finds no reversible error.

The court notes that Bullock submitted several additional medical records

directly to the Appeals Council which were never seen by the ALJ.  This action

raises an issue concerning a remand for the taking of new evidence before the

Commissioner.  Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner,

" . . . but only upon a showing that there is new evidence to be taken which is

material and there is good cause for the failure to incorporate such evidence into

the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that

a claimant must prove that the additional evidence is both "material" and that "good

cause" existed for its not having been submitted at an earlier proceeding.  Sizemore

v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In

order to demonstrate "materiality," a claimant must show that a reasonable

probability exists that the Commissioner would have reached a different conclusion

if originally presented with the new evidence.  <u>Sizemore</u>, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

The medical records with which Bullock seeks a remand of the action include a disability opinion dated July, 10 2008 from Dr. Patton (Tr. 919), treatment notes from the Behavioral Medicine Network dated between July and December of 2008 (Tr. 920-939), a hospitalization report from Rockcastle Hospital dated July 14, 2009 (Tr. 941-944), a hospitalization report from Lake Cumberland Regional Hospital dated July 17, 2009 (Tr. 945-949) and a disability opinion from Dr. Saylor dated July 17, 2010 (Tr. 950).  The disability opinions from Dr. Patton and Dr. Saylor would not be "material" since these concern issues reserved to the Commissioner.  The treatment notes from the Behavioral Medicine Network do not contain more severe specific restrictions relating to the plaintiff's mental condition.  The hospitalization reports from Rockcastle Hospital and Lake Cumberland also do not contain specific mental limitations and are dated well after the issuance of the ALJ's final decision on December 1, 2008.  Thus, these other reports would also not be "material."  Most of the records were dated from the relevant time period and the claimant has not provided "good cause" for not submitting them in a timely fashion.  With regard to the Rockcastle Hospital and Lake Cumberland records, dated after the ALJ's final decision, while the records were not in existence at the time of the denial decision,

such, by itself, does not satisfy the good cause test and a valid reason for failure to obtain the evidence must still be shown.  <u>Oliver v. Secretary of Health and Human Services</u>, 804 F.2d 964, 966 (6th Cir. 1986).  Therefore, a remand for the taking of new evidence before the Commissioner is not appropriate.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 23rd day of November, 2011.

**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**